IIs SPECIAL MULTI-FLEX POLICY consists of this Common Policy Declarations Page, the Policy Jacket, Common Policy onditions, Coverage Parts and any other forms and endorsements issued to be a part of this policy.

REC'D JUL 2 4 2003

**THE HARTFORD**

Policy No. GW 000 253

MICHAEL AUFRECHT, ETAL
6612 NORTH LEMAI
LINCOLNWOOD, IL 60712

## COMMON POLICY DECLARATIONS

| Item | Previous Policy No. NEW |
|---|---|

**1. Named Insured and Mailing Address**

**2. Policy Period**    From  02/03/03   To  02/03/04

12:01 a.m., standard time at your mailing address shown above

**3. Agent or Broker's Name**     **Code**

NAPCO LLC                657590
333 THORNALL STREET
EDISON, NJ 08818

**4. Audit Period:** Not subject to audit unless otherwise stated
☐ Annual  ☐ Semi-annual  ☐ Quarterly  ☐ Monthly

**5. Named Insured is:**
☐ Individual  ☐ Partnership  ☐ Joint Venture
☒ Corporation  ☐ Other

**RECEIVED**

MAR 2 5 2003

MANAGEMENT SERVICES

**6. Description of your Business**   PER APPLICATION

**7. Insurance Provided**

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide insurance as stated in this policy.

The Coverage Parts that are a part of this policy are listed below or on the Extension Schedule attached. The premiums shown may be subject to adjustment.

**8. Summary of Coverage Parts, Insurance Company and Premium:**

| Coverage Part | Co. Code | Insurance Company and Address | Advance Premium |
|---|---|---|---|
| SPECIALTY PROPERTY | 1 | HARTFORD FIRE INS CO HARTFORD, CT 06115 | $299,371.00 |

The Total Premium excluding Automobile .......... $299,371.00  and is payable .......... $299,371.00  at inception and
.......... N/A .......... at each anniversary.

The Total Premium for Automobile is  NOT APPLICABLE  and is payable  NOT APPLICABLE  at inception; but will be recomputed at each anniversary using rates and rules then in effect.

The Total Premium payable at inception is  $299,371.00  An ☒ below means the total premium will be recomputed at each anniversary.  ☐ (See Form IL 00 03)

**9. Form Numbers of Coverage Parts, Forms and Endorsements that are a part of this policy and that are not listed In the Coverage Parts:**

SF 9904/L5015-3

Countersigned by _____     Date  3-18-03

*Authorized Agent*

JMM 03/18/03

**Form HM 00 10 11 85**  Printed in U.S.A. (NS)



EXHIBIT
A

# COMMERCIAL PROPERTY
# SUPPLEMENTAL DECLARATIONS

**THE HARTFORD** 

**POLICY NUMBER:**   GW 0000253

I   This policy consists of:

    A.   This Declarations;

    B.   Manuscript Form;

    C.   Policy Conditions; and

    D.   Any endorsements and Schedules issued to be a part of this Manuscript Form and listed below.

II   Description and location of property covered:

    <u>PER STATEMENT OF VALUES ON FILE WITH THE COMPANY.</u>

III   Limits:

    <u>AS PROVIDED IN THE POLICY ATTACHED.</u>

IV   Perils insured against:

    <u>ALL RISK OF DIRECT PHYSICAL LOSS, INCLUDING FLOOD AND EARTHQUAKE, EXCLUDING CALIFORNIA</u>

    <u>EARTHQUAKE, EXCLUDING FLOOD IN FEMA FLOOD ZONES A AND V, EXCLUDING TERRORISM AS</u>

    <u>PROVIDED IN THE POLICY ATTACHED.</u>

V   Mortgagee

| Prem. No. | Bldg. No. | Mortgage Holder Name and Address |
|-----------|-----------|----------------------------------|
|           |           |                                  |

VI   Except in this Declarations, when we use the word "Declarations" in this policy, we mean this "Declarations" or the "Common Policy Declarations".

VII   All Schedules listed on this Declarations are part of this Declarations.

VIII   Form Numbers of Schedules, Endorsements and forms that are a part of this policy.

    <u>SEE LISTING OF ENDORSEMENTS</u>

IX   The premium for this policy is based on a total insured value of ___<u>SEE S.O.V.</u>___ with an annual rate of ___<u>VARIOUS</u>___ Per 100 of value.

Form SF 99 04 10 91   Printed in U.S.A. (NS)



Policy Number:     GW 0000253          Effective Date:     02/03/03

Named Insured and Address:     MICHAEL AUFRECHT, ETAL
                               6612 NORTH LEMAI
                               LINCOLNWOOD, IL 60712

# LISTING OF POLICY PROVISIONS AND ENDORSEMENTS FORMING A PART OF THE POLICY AT ISSUE

This Listing forms a part of the following:

PROPERTY EXCESS INSURANCE POLICY

The following is a listing of endorsements by Form Number and Title that form a part of the policy at issue.

|   | FORM NUMBER | TITLE OF ENDORSEMENT |
|---|---|---|
| 1. | SF9909 | BRIDGING ENDORSEMENT |
| 2. | IH0017 | COMMON POLICY CONDITIONS |
| 3. | NONE | BROKER MANUSCRIPT POLICY FORM (1-28) |
| 4. | L-5040-0 | ENDORSEMENT A; AMENDMENT TO THE BROKER MANUSCRIPT POLICY FORM |
| 5. | PE 6 | POLICY LIMITATIONS |
| 6. | NONE | EXCLUSION- "DENIAL OF SERVICE ATTACKS" |
| 7. | NONE | EXCLUSION- "ELECTRONIC VANDALISM" |
| 8. | C-194-SP | EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES |
| 9. | C-202 (02/02) | EXCLUSION – WAR, TERRORISM AND MILITARY ACTION |
| 10. | C-207 (10/2002) | "FUNGUS" ENDORSEMENT |

Form L-5015-3 (Ed.11/88)    Printed in U.S.A (NS)

Copyright Hartford Fire Insurance Company, 1987



**THE HARTFORD**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# BRIDGING ENDORSEMENT

Parts of this policy are written in simplified language and parts are not.  Different words have the same meaning as follows:

1.  a.  "You" and "your" refer to the Named Insured shown in the Declarations.

    b.  "Named Insured" refers to "you" or "your".

2.  a.  "We", "us" and "our" refer to the Company providing this insurance.

    b.  "Company" refers to "we", "us" or "our".

3.  a.  "Coverage Part" refers to "policy".

    b.  "Policy" refers to "Coverage Part".

4.  "Common Policy Conditions" refers to conditions contained in this "policy".

**Form SF 99 09 06 94**   Printed in U.S.A.   (NS)

# COMMON POLICY CONDITIONS



All Coverage Parts included in this Policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this Policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even it we have not made or offered a refund

6. It notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized on behalf of all insureds to agree with us on changes in the terms of this policy. If the terms are changed, the changes will be shown in an endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

We may do the same as to the books and records of any organization you newly acquire or form that is deemed to be a Named Insured under this policy.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find, and

1. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. Such inspections are not safety inspections. We do not undertake any duty to provide for the health or safety of any person. And we do not represent or warrant that conditions:

1. Are safe or healthful: or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations on our behalf

Form IH 00 17 02 95

Copyright Hartford Fire Insurance Company. 1995
(includes copyrighted material of Insurance Services Office
with its permission. Copyright, Insurance Services Office. 1986)

COMMON POLICY CONDITIONS (Continued)

E. PREMIUMS

The first Named Insured shown in the Declarations:
1. Is responsible for the payment of all premiums; and
2. Will be the payee for any return premiums we pay:

F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Our President and Secretary have signed this policy. The Declarations page has also been countersigned by our duly authorized representative.

Michael S. Wilder, *Secretary*

Ramani Ayer, *Chairman & CEO*

Form IH 00 17 02 95

Copyright Hartford Fire Insurance Company. 1995
(includes copyrighted material of Insurance Services Office
with Its permission. Copyright, Insurance Services Office. 1986)

# Property Form
## Table of Contents

Page #

Term of Insurance ...................................................................................................................3

Participation ..........................................................................................................................3

Limits of Liability .................................................................................................................3

Deductible .............................................................................................................................3

Loss Payable .........................................................................................................................4

Territory ................................................................................................................................4

Coverage – Real and personal Property .................................................................................4

Coverage – Business Interruption .........................................................................................4

Coverage – Extra Expense ....................................................................................................6

Coverage – Rental Value/Rental Income ..............................................................................6

Coverage – Royalties ............................................................................................................7

Coverage – Provisions Applicable to Business Interruption, Extra Expense,
and Rental Values Coverages .................................................................................................7

Coverage – Extensions of Coverage .....................................................................................8

Coverage – Interruption by Civil or Military Authority .......................................................9

Coverage – Ingress/Egress ...................................................................................................9

Coverage – Transit ..............................................................................................................10

Coverage – Accounts Receivable ........................................................................................11

Coverage – Leasehold Interest ............................................................................................11

Perils Insured Against ..........................................................................................................13

Perils Excluded ....................................................................................................................13

Property Excluded ...............................................................................................................16

Valuation .............................................................................................................................16

Occurrence Defined .............................................................................................................18

Earthquake and Flood ..........................................................................................................18

Fire Brigade Charges and Extinguishing Expenses .............................................................19

Debris Removal ...................................................................................................................19

Pollutant Clean Up and Removal ........................................................................................19

Demolition and Increased Cost of Construction ..................................................................20

Civil Authority ....................................................................................................................20

Expediting Expense .............................................................................................................20

Contributing Insurance ........................................................................................................20

Excess Insurance .................................................................................................................20

Underlying Insurance ..........................................................................................................21

Other Insurance ...................................................................................................................21

1

(Continued)

Subrogation .................................................................................................................. 21

Salvage and Recoveries ............................................................................................... 21

Brand or Trademark ..................................................................................................... 22

Machinery ...................................................................................................................... 22

Errors or Omissions ...................................................................................................... 22

Notice of Loss ................................................................................................................ 22

Proof of Loss .................................................................................................................. 22

Partial Payment of Loss ............................................................................................... 23

Assigned Adjuster ......................................................................................................... 23

Loss Adjustment Expenses .......................................................................................... 23

Appraisal ....................................................................................................................... 23

Consequential Loss ....................................................................................................... 23

Pair and Set ................................................................................................................... 24

Assistance and Cooperation of the Insured .............................................................. 24

Sue and Labor ............................................................................................................... 24

Payment of Loss ............................................................................................................ 24

Reinstatement ............................................................................................................... 24

Suit Against the Company ........................................................................................... 25

Certificates of Insurance ............................................................................................. 25

Cancellation .................................................................................................................. 25

Joint Loss Agreement ................................................................................................... 25

Full Waiver .................................................................................................................... 26

Values ............................................................................................................................. 26

Titles of Paragraphs ..................................................................................................... 26

Priority Payments ......................................................................................................... 27

# PROPERTY FORM

*Michael Aufrecht, etal* and any subsidiary, associated or affiliated company, corporation, firm, organization, partnership, joint venture or individual as exists now or is hereafter constituted or acquired, and any other party or interest that is required by contract or other agreement to be named, hereafter referred to as the "Insured".

1.  **TERM OF INSURANCE**

    In consideration of $299,371 annual premium, this policy attaches and covers for a period of one year, from February 3, 2003 to February 3, 2004, beginning and ending at 12:01 A.M., at the location of the property involved.

2.  **PARTICIPATION**

    This policy covers for a 100 percent interest in this insurance, and this Company shall not be liable for more than 100 percent of the Limits of Liability as specified in Clause 3.

3.  **LIMITS OF LIABILITY**

    $10,000,000   per occurrence, except:
    $10,000,000   per occurrence and in the annual aggregate as respects Flood (*excluding Flood within any 100 year flood zone and/or FEMA flood zones A & V or any subzone thereof*).
    $10,000,000   per occurrence and in the annual aggregate as respects Earthquake (*excluding Earthquake in California*).

4.  **DEDUCTIBLE**

    A.   All losses, damages, or expenses arising out of any one occurrence shall be adjusted as one loss and from the amount of such adjusted loss shall be deducted the sum of $50,000, except:

    2%   of total insurable values involved in loss or damage as respects the peril of Windstorm at Tier One Jurisdictions, subject to a minimum of $100,000 per occurrence.

    Whether the claim involves loss at one or more locations, the deductible amount shall apply against the total loss suffered by the Insured from any one occurrence.

    B.   If two or more deductible amounts in this policy apply to a single occurrence, the total to be deducted shall not exceed the largest deductible applicable.

3

5.    **LOSS PAYABLE**

Loss, if any, shall be adjusted with and payable to the Insured, or as directed by them.

6.    **TERRITORY**

This policy covers within and between the fifty states comprising the United States of America, the District of Columbia, and Canada.

7.    **COVERAGE**

Except as hereinafter excluded, this policy covers:

A.    Real and Personal Property

    (1)    The interest of the Insured in all real and personal property (including improvements and betterments) owned or used by the Insured, subject to the schedule of values on file with this Company.

        As respects any locations newly acquired subsequent to the inception date of this policy, this Company shall provide automatic coverage for a period of time not exceeding ninety (90) days from the date of such acquisition, until reported to this Company.  Additional premium shall be charged from the date of acquisition.  Such newly acquired location coverage shall not include loss or damage from Flood or Earthquake.  Such coverage also shall not cover loss or damage from Wind if such location is situated in a Tier 1 jurisdiction (as defined on Endorsement A herein), until reported.

        In the event of loss or damage, this Company agrees to accept and consider the Insured as sole and unconditional owner of improvements and betterments, notwithstanding any contract or lease to the contrary.

    (2)    The interest of the Insured in the real and personal property of others in the Insured's care, custody, or control and the Insured's liability imposed by law or assumed by written contract for such property.

    (3)    At the option of the Insured, personal property of the Insured's officials and employees while on the premises of the Insured.

    (4)    Contractors' and vendors' interests in property covered to the extent of the Insured's liability imposed by law or assumed by written contract prior to the loss.

B.    Business Interruption

    (1)    Loss resulting from necessary interruption of business conducted by the Insured and caused by loss, damage, or destruction by any of the perils covered herein

4

during the term of this policy to real and personal property as described in Clause 7A.

(2)    If such loss occurs during the term of this policy, it shall be adjusted on the basis of the ACTUAL LOSS SUSTAINED by the Insured, consisting of the net profit which is thereby prevented from being earned and of all charges and expenses, including ordinary payroll, only to the extent that these must necessarily continue during the interruption of business and only to the extent to which such charges and expenses would have been earned had no loss occurred.

(3)    In the event of loss, damage, or destruction to property described in Clause 7A. caused by any of the perils covered herein which results in an interruption of research and development activities which in themselves would not have produced income during the indemnity period, this policy shall cover the actual loss sustained of the continuing fixed charges and expenses, including payroll, directly attributable to such research and development activities.

(4)    However, this Company shall not be liable for any loss resulting from damage to or destruction of finished stock nor for the time required to reproduce said finished stock. Finished stock shall mean stock manufactured or held by the Insured which in the ordinary course of the Insured's business is ready for packing, shipment, or sale.

(5)    Resumption of Operations: It is a condition of this insurance that if the Insured could reduce the loss resulting from the interruption of business;

    (a)    by a complete or partial resumption of operation of the property insured, whether damaged or not; or

    (b)    by making use of available stock, merchandise, or other property, such reduction shall be taken into account in arriving at the amount of loss hereunder.

(6)    Experience of the Business:

    (a)    In determining the amount of net profit, charges, and expenses covered hereunder for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the experience of the business before the date of damage or destruction and to the probable experience thereafter had no loss occurred.

    (b)    With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available experience of the business after completion of the construction, erection, installation, or assembly.

C.    Extra Expense

    (1)    Extra expense incurred resulting from loss or damage to property by any of the perils covered herein during the term of this policy.

    (2)    "Extra expense" means the excess of the total cost during the period of restoration of the damaged property chargeable to the operation of the Insured's business over and above the total cost that would normally have been incurred to conduct the business during the same period had no loss or damage occurred.

D.    Rental Value/Rental Income

    (1)    Rental value loss sustained by the Insured resulting directly from the necessary untenability caused by loss, damage, or destruction by any of the perils covered herein during the term of this policy to real or personal property as described in Clause 7A. but not exceeding the reduction in rental value less charges and expenses which do not necessarily continue during the period of untenability.

    (2)    If the Insured is the lessor, for the purposes of this insurance, "rental value" is defined as the sum of:

        (a)    the total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the Insured, and

        (b)    the amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured, and

        (c)    the fair rental value of any portion of said property which is occupied by the Insured.

    (3)    If the Insured is the lessee, rental value shall be the determined rental which the Insured is obligated to pay (including ground rents, accrued charges, real estate taxes and interest if the Insured shall be liable therefor) less such charges and expenses as do not necessarily continue.

    (4)    Experience of the Business

        (a)    In determining the amount of rental value covered hereunder for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the rental experience before the date of damage or destruction and to the probable experience thereafter had no loss occurred.

(b)     With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available rental experience of the business after completion of the construction, erection, installation or assembly.

E.    <u>Royalties</u>

(1)    Loss of income to the Insured under royalty, licensing fees, or commission agreements between the Insured and another party which is not realizable due to loss, damage or destruction by any of the perils covered herein during the term of this policy to property of the other party.

(2)    If such loss occurs during the term of this policy, it shall be adjusted on the basis of ACTUAL LOSS SUSTAINED of such income referred to in paragraph (1) above, which would have been earned had no loss occurred.

(3)    Resumption of Operations: The Insured shall influence, to the extent possible, the party with whom the agreement described in paragraph (1) above has been made to use any other machinery, supplies or locations in order to resume business so as to reduce the amount of loss hereunder and the Insured shall cooperate with that party in every way to effect this, but not financially, unless such expenditures shall be authorized by this Company.

(4)    Experience of the Business: In determining the amount of income derived from the agreements(s) described in paragraph (1) above for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the amount of income derived from such agreement(s) before the date of damage or destruction and to the probable amount of income thereafter had no loss occurred.

F.    <u>Provisions Applicable to Business Interruption, Extra Expense, and Rental Values Coverages</u>

(1)    Period of Recovery: The length of time for which loss may be claimed

(a)    shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace such part of the property as has been damaged or destroyed;

(b)    and, such additional length of time to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

(i)    the date on which the liability of the Company for loss or damage would otherwise terminate; or

7

(ii)    the date on which repair, replacement, or rebuilding of such part of the property as has been damaged is actually completed;

but in no event for more than ninety (90) days from said later commencement date;

(c)    with respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly shall be determined as provided in (a) above but such determined length of time shall be applied to the experience of the business after the business has reached its planned level of production or level of business operation;

(d)    shall commence with the date of such loss or damage and shall not be limited by the date of expiration of this policy.

(2)    Special Exclusions: This section of the policy does not insure against any increase of loss which may be occasioned by the suspension, lapse, or cancellation of any lease, license, contract, or order (unless such suspension, lapse or cancellation results directly from the interruption of business or untenability of the premises and then only such loss as affects the earnings of the business or the rental value of the premises during, and limited to, the Period of Recovery stipulated under this policy); nor for any increase of loss due to interference at an insured premises by strikers or other persons with rebuilding, repairing, or replacing the property damaged or destroyed, or with the resumption or continuation of business, or with the reoccupancy of the premises;

(3)    Expenses to Reduce Loss: This policy also covers such expenses as are necessarily incurred for the purpose of reducing any loss under this policy, however such expenses may not exceed the amount by which the loss under this policy is thereby reduced.

(4)    Extension of Coverage: This policy, subject to all provisions and without increasing the amount of said policy, also insures against loss resulting from damage to or destruction by the perils insured against, of:

(a)    electrical, steam, gas, water, telephone, and other transmission lines and related plants, substations and equipment situated on or outside of the premises;

(b)    property that directly or indirectly prevents a supplier of goods and/or services to the Insured from rendering their goods and/or services, or property that prevents a receiver of goods and/or services from receiving the Insured's goods and/or services;

8

(c)  dams, reservoirs, or equipment connected therewith when water, used as a raw material or used for power or for other manufacturing purposes, stored behind such dams or reservoirs is released from storage and causes an interruption of business as a result of lack of water supply from such sources. This Company's liability shall not exceed 30 consecutive days after such length of time as would be required with the exercise of due diligence and dispatch to repair or replace the damaged or destroyed dam, reservoir, or equipment.

(d)  necessary interruption of business or reduced earnings whether total or partial caused by damage to or destruction of, from the perils insured against, real or personal property not owned or operated by the Insured, located in the same vicinity as the Insured and which attracts business to that vicinity.

(e)  property while in transit which results in the necessary interruption of business conducted by the Insured or delay in completion of new facilities and/or improvements of existing facilities.

(5)  Interruption by Civil or Military Authority: This policy is extended to cover for a period not to exceed thirty (30) consecutive days the loss sustained during the period of time, when, as a direct result of a peril insured against, access to real or personal property is prohibited by order of civil or military authority. Physical damage must occur within 2.5 miles of the Insured's premises.

(6)  Ingress/Egress: This policy is extended to cover for a period not to exceed thirty (30) consecutive days the loss sustained during the period of time, when as a direct result of a peril insured against, ingress to or egress from an insured premises is thereby prevented. Physical damage must occur within 2.5 miles of the Insured's premises.

(7)  Interdependency: This policy covers against any interdependency loss sustained by any of the Insured's units covered herein resulting from the interruption of the business as a consequence of damage by any insured peril to any of the Insured's real and personal properties which act as suppliers, manufacturers, processors of components, goods or other materials or as recipients of such goods or other materials.

9

G.    Transit

(1)    Property in transit, and this policy attaches and covers shipments within and between the territorial limits of this policy, including the coastal waters thereof, by any means of conveyance, from the time the property is moved for purpose of loading and continuously thereafter while awaiting and during loading and unloading and in temporary storage, including temporary storage on any conveyance intended for use for any outbound or used for inbound shipment, including during deviation and delay, until safely delivered and accepted at place of final destination.

(2)    This insurance is extended to cover loss or damage to property:

   (a)    sold and shipped by the Insured under terms of F.O.B. point of origin or other terms usually regarded as terminating the shipper's responsibility short of points of delivery;

   (b)    arising out of any unauthorized person(s) representing themselves to be the proper party(ies) to receive goods for shipment or to accept goods for delivery;

   (c)    occasioned by the acceptance by the Insured, by its agents, or by its customers of fraudulent bills of lading, shipping and delivery orders, or similar documents;

   (d)    at the Insured's option, which is incoming to the Insured.

(3)    The Insured may waive right(s) of recovery against private, contract, and common carriers and accept bills of lading or receipts from carriers, bailees, warehousemen, or processors limiting or releasing their liability, but this transit insurance shall not inure to the benefit of any carrier, bailee, warehouseman, or processor.

   With respect to shipments described under subparagraphs (2)(a) and (2)(d) above, this Company agrees to waive its rights of subrogation against shippers and consignees at the option of the Insured.

(4)    The Insured is not to be prejudiced by any agreements exempting lightermen from liability.

(5)    Seaworthiness of any vessel or watercraft, and airworthiness of any aircraft are admitted between this Company and the Insured.

H.    Accounts Receivable

    (1)    All sums due the Insured from customers, provided the Insured is unable to effect collection thereof as the direct result of loss of or damage to records of accounts receivable;

    (2)    Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by such loss or damage;

    (3)    Collection expense in excess of normal collection cost and made necessary because of such loss or damage;

    (4)    Other expenses, when reasonably incurred by the Insured in reestablishing records of accounts receivable following such loss or damage.

For the purpose of this insurance, credit card company charge media shall be deemed to represent sums due the Insured from customers, until such charge media is delivered to the credit card company.

When there is proof that a loss of records of accounts receivable has occurred but the Insured cannot more accurately establish the total amount of accounts receivable outstanding as of the date of such loss such amount shall be computed as follows:

    (1)    the monthly average of accounts receivable during the last available twelve months shall be adjusted in accordance with the percentage increase or decrease in the twelve months average of monthly gross revenues which may have occurred in the interim.

    (2)    the monthly amount of accounts receivable thus established shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred, due consideration also being given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by the Insured, and an amount to allow for probable bad debts which would normally have been uncollectible by the Insured.

I.    Leasehold Interest

    (1)    Pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

        (a)    the amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease for the unexpired term of the lease;

(b)  improvements and betterments to real property during the unexpired term of the lease which is not covered under any other section of this policy;

(c)  the amount of advance rental paid by the Insured and not recoverable under the terms of the lease for the unexpired term of the lease;

when property is rendered wholly or partially untenantable by any of the perils covered herein during the term of this policy and the lease is canceled by the lessor in accordance with the conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located; and

(2)

(a)  "Interest of the Insured as Lessee" when property is rendered wholly or partially untenantable by any of the perils covered herein during the term of this policy and the lease is canceled by the lessor in accordance with the conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located.

(b)  The "Interest of the Insured as Lessee" as referred to herein shall be paid for the first three months succeeding the date of the loss and the "Net Lease Interest" shall be paid for the remaining months of the unexpired lease.

(3)  Definitions:

The following terms, wherever used in this section shall mean as follows:

(a)  the "Interest of the Insured as Lessee" is defined as:

(i)  the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease.

(ii)  the rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

(b)  "Net Lease Interest" is defined as that sum, which placed at 6 percent interest compounded annually will be equivalent to the "Interest of the Insured as Lessee".

(4) This Company shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Insured exercising an option to cancel the lease.

8.    **PERILS INSURED AGAINST**

This policy insures against risks of direct physical loss of or damage to property described herein including general average, salvage, and all other charges on shipments covered hereunder, except as hereinafter excluded.

9.    **PERILS EXCLUDED**

This policy does not insure:

A.    against any fraudulent or dishonest act or acts committed by the Insured or any of the Insured's employees meaning only dishonest or fraudulent acts committed by the Insured or the Insured's employees with the manifest intent to:

(1) cause the Insured to sustain such loss; and

(2) obtain financial benefit for the Insured, Insured's employee, or for any other person or organization intended by the Insured or the employee to receive such benefit, other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions, or other employee benefits earned in the normal course of employment;

B.    against the cost of making good defective design or specifications, faulty material, or faulty workmanship; however, this exclusion shall not apply to loss or damage resulting from such defective design or specifications, faulty material, or faulty workmanship;

C.    against electrical injury or disturbance to electrical appliances, devices, or wiring caused by electrical currents artificially generated unless loss or damage from a peril insured herein ensues and then this policy shall cover for such ensuing loss or damage;

D.    against mechanical breakdown unless loss or damage from a peril insured herein ensues and then this policy shall cover for such ensuing loss or damage;

E.    against explosion, rupture, or bursting of steam boilers, steam pipes, steam turbines, or steam engines owned or operated by the Insured unless loss or damage from a peril insured herein ensues and then this policy shall cover for such ensuing loss or damage; it is agreed that direct loss resulting from the explosion of accumulated gases or unconsumed fuel within the firebox (or combustion chamber) of any fired vessel or within the flues or passages which conduct the gases or combustion therefrom shall be covered hereunder;

F.    against errors in processing or manufacture of the Insured's product unless loss or damage from a peril insured herein ensues and then this policy shall cover for such ensuing loss or damage;

G.    against ordinary wear and tear or gradual deterioration, unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for such ensuing loss or damage;

H.    against normal settling or shrinkage of walls, floors, foundations or ceilings unless loss or damage from a peril insured herein ensues and then this policy shall cover for such ensuing loss or damage;

I.    pollution caused directly or indirectly by the release, discharge, dispersal, seepage, migration, or escape of pollutants or contaminants;

J.    against nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate, or remote; or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this policy; except:

    (1)    if fire ensures, liability is specifically assumed for direct loss by such ensuing fire but not including any loss due to nuclear reaction, nuclear radiation, or radioactive contamination;

    (2)    this Company shall be liable for loss or damage caused by sudden and accidental radioactive contamination including resultant radiation damage for each occurrence from material used or stored or from processes conducted on insured premises provided at the time of loss there is neither a nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction nor any new or used nuclear fuel on the insured premises;

K.

    (1)    against hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or expected attack:

        (a)    by any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces;

        (b)    or by military, naval, or air forces;

        (c)    or by any agent of any such government, power, authority, or forces;

    (2)    against any weapon employing atomic fission or fusion;

(3)    against rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such occurrence;

(4)    seizure or destruction by order of public authority, except destruction by order of public authority to prevent the spread of, or to otherwise contain, control or minimize loss, damage or destruction which occurs due to a peril insured against under this policy;

(5)    risks of contraband or illegal trade.

L.    against mysterious or unexplained disappearance or shortages discovered upon taking inventory, except this exclusion shall not apply to property while in the custody of any carrier for hire or other bailee;

M.    against delay or loss of market, unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for such ensuing loss or damage;

N.    against fungi, moths, vermin, termites or other insects, rust, corrosion of material, mold, mildew, wet or dry rot, inherent vice and latent defect, unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for such ensuing loss or damage.

O.    against voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick device or false pretense.

P.    against Flood in any 100 year flood zone and/or FEMA flood zones A & V or any subzone thereof.

Q.    against earthquake on property within the State of California unless loss or damage by the peril of fire ensues and then this Company shall only be liable for such ensuing loss or damage.

Exclusions B, C, D, E, F and H do not apply to property in transit.

Exclusions C, D, E and F do not apply to alterations, additions, and property while in the course of construction, erection, installation or assembly.

Exclusions C, D, and E do not apply to Valuable Papers & Records, EDP Media, EDP Systems and all such related items.

Exclusion E does not apply to locomotives, rolling stock, or other conveyances insured herein.

15

10.    **PROPERTY EXCLUDED**

This policy does not cover loss or damage to:

A.    Accounts, bills, currency, deeds, notes, evidence of debt, precious stones and precious metals, jewelry, furs, bullion, money and securities, except as provided in this policy;

B.    Land and land values;

C.    Water, except water which is normally contained within any type of tank, piping system or other process equipment;

D.    Growing crops, standing timber, plants, lawns, trees, shrubs, and animals except for research;

E.    Watercraft, aircraft, motor vehicles licensed for highway use when not on the Insured's premises, but this motor vehicle exclusion shall not apply to contractor's equipment;

F.    Waterborne shipments to and from Puerto Rico, the Virgin Islands, Hawaii, and Alaska; waterborne shipments via the Panama Canal;

G.    Export shipments after loading on board an overseas vessel or watercraft or after ocean marine insurance attaches, whichever occurs first; and import shipments prior to discharge from the overseas vessel or watercraft or until the ocean marine insurance terminates, whichever occurs last;

H.    Bulkheads, pilings, retaining walls, structures located on or partially over water, piers, docks, wharves, dikes, dams, canals, seawalls, underground pipes, flues, tanks, drains and tunnels;

I.    Roads, sidewalks, pavements;

J.    Property sold by you under conditional sale, trust agreement, installment plan or other deferred payment plan after delivery to customers;

K.    Mines, caverns and any property contained therein;

L.    Contraband on property in the course of illegal transportation or trade;

M.    The cost of excavations, grading, filling or backfilling.

11.    **VALUATION**

At the time of loss, the basis of adjustment shall be as follows:

A.    Valuable papers and records:  the cost to repair or replace the property with other of like kind and quality including the cost of gathering and/or assembling information; or, if not so replaced, actual cash value.

16

"Valuable papers and records" are defined as written, printed, or otherwise inscribed documents and records, including but not limited to books, maps, films, drawings, abstracts, deeds, mortgages, micro-inscribed documents, manuscripts, and electronic data processing media but not including money and/or securities.

The term "securities" shall mean all negotiable and nonnegotiable instruments or contracts representing either money or other property, and includes revenue and other stamps in current use, tokens, and tickets but does not include money;

B.

    (1)    Raw materials and supplies:  The replacement cost new;

    (2)    Stock in process:  The value of raw materials and labor expended plus the proper proportion of overhead charges;

    (3)    Finished stock and merchandise:  The regular cash selling price at place of loss, less all discounts and charges to which such property would have been subject had no loss occurred;

C.    Buildings, structures, and personal property of others for which the Insured is liable:  A valuation consistent with the liability of the Insured;

D.    Electronic data processing equipment:  The replacement cost new if actually replaced; if not so replaced, at actual cash value (with proper deduction for depreciation).  Should the property insured be technologically obsolete or unavailable because it is no longer in production, and should the property be actually replaced then this Company shall be liable for the replacement cost new of equipment that will perform the same function(s) as the original equipment including any reasonable betterment inherent in the design of such equipment.

E.    Fine arts, at original cost to the Insured, latest appraised value or current market value, whichever the greater.

F.    Exhibitions and displays:  At cost to the Insured;

G.    Other property not otherwise provided for:  At replacement cost new; if the property is not repaired, rebuilt or replaced with similar property on the same or another site, the Company shall not be liable for more than the actual cash value (with proper deduction for depreciation) of the property destroyed.

H.    Permission is granted for the Insured to replace the damaged property with any property at the same site or another site within the territorial limits of this policy, but recovery is limited to what it would cost to replace on the same site.  If property damaged or destroyed is not repaired, rebuilt or replaced within a reasonable period after the loss or damage, this Company shall not be liable for more than the actual cash value at the time of loss (ascertained with proper deduction for depreciation) of the property damaged or destroyed.

All to be computed at place of loss.

12.     **OCCURRENCE DEFINED**

The term "occurrence" as used herein shall be deemed to mean a loss or a series of losses or several losses which are attributable directly or indirectly to one cause or disaster or to one series of similar causes or disasters and all such losses shall be added together and the total amount of such losses shall be treated as one occurrence irrespective of the area under which such losses occur. An occurrence shall be limited to a period of 168 hours.

13.     **EARTHQUAKE AND FLOOD**

A.     Each loss by earthquake, volcanic action, or flood shall constitute a single loss hereunder.

    (1)     If more than one earthquake or volcanic action occurs within any period of 168 hours during the term of this policy, the beginning of which 168-hour period may be determined by the Insured; or

    (2)     If any flood that occurs within a period of 168 hours during the term of this policy, the beginning of which 168-hour period may be determined by the Insured; or

    (3)     If any flood that results from any tidal wave or series of tidal waves caused by any one disturbance and occurs within a period of 168 hours during the term of this policy, the beginning of which 168-hour period may be determined by the Insured;

such earthquake, volcanic action, or flood shall be deemed to be a single occurrence within the meaning of this policy.

B.     Should any time period referred to in "A." above extend beyond the expiration date of this policy and commence prior to expiration, this Company shall pay all such earthquake, volcanic action, or flood losses occurring during such period as if such period fell entirely within the term of this policy.

C.     This Company shall not be liable, however, for any loss caused by any earthquake, volcanic action, or flood occurring before the effective date and time or commencing after the expiration date and time of this policy.

D.     In the event of reduction or exhaustion of the earthquake and flood aggregate limits of liability under the underlying policy(ies) by reason of loss(es) thereunder, this policy shall,

    (1)     in the event of reduction, pay the excess of the reduced underlying limit, and;

    (2)     in the event of exhaustion, continue in force as underlying insurance.

18

**Definition of Earthquake:**

"Earthquake", as used herein, means earth movement, earthquake, volcanic action, landslide, earth sinking including sinkhole, rising or shifting, including collapse, cracking or shifting of buildings, structures, or their parts, caused by, resulting from, contributed to or aggravated by "earthquake", all occurring during any period of (168) consecutive hours during the term of this policy.

**Definition of Flood:**

"Flood", as used herein, means:

(1)   flood, surface water, backup of sewers and drains, waves, tidal water or tidal wave, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not;

(2)   water which backs up through sewers or drains;

(3)   mudslide or mud flow;

(4)   water below the surface of the ground including that which exerts pressure on or flows, seeps or leaks through sidewalks, driveways, foundations, walls, basements or other floors, or through doors, windows or other openings in such sidewalks, driveways, foundations, walls or floors.

14.   **FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES**

This policy covers the following expenses resulting from a peril insured against:

A.   fire brigade charges and other extinguishing expenses for which the Insured may be assessed;

B.   loss of fire extinguishing materials expended.

15.   **DEBRIS REMOVAL**

This policy covers the following expenses resulting from a peril insured against:

A.   the cost of removal of debris of property covered hereunder;

B.   the cost of removal of debris of property not insured hereunder from the premises of the Insured.

16.   **POLLUTANT CLEAN UP AND REMOVAL**

If there is a release, discharge or dispersal of pollutants which results from a peril not otherwise excluded in this policy, this policy shall cover the necessary and reasonable clean-up costs actually incurred by the Insured to extract such pollutants from land or water and to restore or

19

replace land or water polluted as a result of such loss. The most this company shall pay for these expenses is $100,000 per occurrence and in the annual aggregate.

17. **DEMOLITION AND INCREASED COST OF CONSTRUCTION**

In the event of a covered physical loss or damage under this policy that causes the enforcement of any law or ordinance that is in force at the time and place of loss and that regulates the construction, repair or use of property, this Company shall be liable for:

A.    the cost of demolishing the undamaged property including the cost of clearing the site;

B.    the proportion that the value of the undamaged part of the property bore to the value of the entire property prior to loss;

C.    increased cost of repair or reconstruction of the damaged and undamaged property on the same or another site and limited to the costs that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site. However, this Company shall not be liable for any increased cost of construction loss unless the damaged property is actually rebuilt or replaced;

D.    any increase in the business interruption, extra expense, rental value and royalties loss arising out of the additional time required to comply with said law or ordinance.

18. **CIVIL AUTHORITY**

This insurance is extended to cover direct loss or damage to insured property caused by acts of destruction executed by order of any public authority at the time and only during a conflagration to retard the spread thereof.

19. **EXPEDITING EXPENSE**

This policy covers the reasonable extra cost of temporary repair and of expediting the repair of damaged property insured hereunder, including overtime and express freight or other rapid means of transportation.

20. **CONTRIBUTING INSURANCE**

Contributing insurance is insurance written upon the same plan, terms, conditions, and provisions as those contained in this policy. This insurance shall contribute in accordance with the conditions of this policy only with other contributing insurance as defined.

21. **EXCESS INSURANCE**

Excess insurance is insurance over the limit of liability set forth in this policy. The existence of such excess insurance shall not prejudice the coverage provided under this policy nor will it reduce any liability hereunder.

22. **UNDERLYING INSURANCE**

    A.    Underlying insurance is insurance on all or any part of the deductible and against all or any of the perils covered by this policy including declarations of value to the carrier for hire. The existence of such underlying insurance shall not prejudice or affect any recovery otherwise payable under this policy.

    B.    If the limits of such underlying insurance exceed the deductible amount which would apply in the event of loss under this policy, then that portion which exceeds such a deductible amount shall be considered "other insurance".

23. **OTHER INSURANCE**

Except for insurance described by the contributing insurance clause, by the excess insurance clause, or by the underlying insurance clause, this policy shall not cover to the extent of any other insurance, whether prior or subsequent hereto in date, and whether directly or indirectly covering the same property against the same perils. This Company shall be liable for loss or damage only to the extent of that amount in excess of the amount recoverable from such other insurance.

24. **SUBROGATION**

    A.    Any release from liability entered into by the Insured prior to loss hereunder shall not affect this policy or the right of the Insured to recover hereunder. The right of subrogation against the Insured, affiliated, subsidiary, and associated companies, or corporations, or any other corporations or companies associated with the Insured through ownership or management, is waived and at the option of the Insured, against a tenant of the Insured, provided there is a written waiver prior to loss.

    B.    In the event of any payment under this policy, this Company shall be subrogated to the extent of such payment to all the Insured's rights of recovery therefor. The Insured shall execute all papers required and shall do anything that may be necessary at the expense of the Company to secure such right. The Company will act in concert with all other interests concerned, i.e., the Insured and any other company(ies) participating in the payment of any loss as primary or excess insurers, in the exercise of such rights of recovery. If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the costs of recovery shall be divided between the interests concerned in the proportion of their respective interests. If there should be no recovery, the expense of proceedings shall be borne proportionately by the interests instituting the proceedings.

25. **SALVAGE AND RECOVERIES**

All salvages, recoveries, and payments, excluding proceeds from subrogation and underlying insurance recovered or received prior to a loss settlement under this policy shall reduce the loss accordingly. If recovered or received subsequent to a loss settlement under this policy, such net amounts recovered shall be divided between the interests concerned, i.e. the Insured and any

other Company(s) participating in the payment of any loss, in the proportion of their respective interests.

26.     **BRAND OR TRADEMARK**

In case of damage by a peril insured against to property bearing a brand or trademark or which in any way carries or implies the guarantee or the responsibility of the manufacturer or Insured, the salvage value of such damaged property shall be determined after removal at this Company's expense in the customary manner of all such brands or trademarks or other identifying characteristics. The Insured shall have full right to the

possession of all goods involved in any loss under this policy and shall retain control of all damaged goods. The Insured, exercising a reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this policy are fit for consumption and/or distribution. No goods so deemed by the Insured to be unfit for consumption and/or distribution shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow this Company any salvage obtained by the Insured on any sale or other disposition of such goods.

27.     **MACHINERY**

In case of loss or damage by a peril insured against to any part of a machine or unit consisting of two or more parts when complete for use, the liability of the Company shall be limited to the value of the part or parts lost or damaged or, at the Insured's option, to the cost and expense of replacing or duplicating the lost or damaged part or parts or of repairing the machine or unit.

28.     **ERRORS OR OMISSIONS**

Unintentional error or omission made by the Insured in reporting descriptions of property shall not void or impair the insurance hereunder provided the Insured reports such error or omission as soon as reasonably possible after discovery by the Insured's home office insurance department.

29.     **NOTICE OF LOSS**

As soon as practicable after any loss or damage occurring under this policy is known to the Insured's home office insurance department, the Insured shall report such loss or damage with full particulars for transmittal to this Company.

30.     **PROOF OF LOSS**

It shall be necessary for the Insured to render a signed and sworn proof of loss to the Company or its appointed representative stating the place, time, and cause of the loss, damage, or expense; the interest of the Insured and of all others; the value of the property involved in the loss; and the amount of loss, damage, or expense.

31. **PARTIAL PAYMENT OF LOSS**

In the event of a loss covered by this policy, it is understood and agreed that the Company shall allow a partial payment(s) of claim subject to the policy provisions and normal Company adjustment process.

32. **ASSIGNED ADJUSTER**

It is agreed that the assignment of a loss adjuster to adjust losses covered hereunder, shall be mutually agreed upon by the Insured and the Company.

33. **LOSS ADJUSTMENT EXPENSES**

This policy is extended to include expenses incurred by the Insured, or by the Insured's representatives for preparing and certifying details of a claim resulting from a loss which would be payable under this policy. However, this Company shall not be liable under this clause for expenses incurred by the Insured in utilizing the services of a public adjuster.

34. **APPRAISAL**

If the Insured and this Company fail to agree on the amount of loss, each, upon the written demand either of the Insured or of this Company made within 60 days after receipt of proof of loss by the Company, shall select a competent and disinterested appraiser. The appraisers shall then select a competent and disinterested umpire. If they should fail for 15 days to agree upon such umpire, then upon the request of the Insured or of this Company, such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending. Then, at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value at the time of loss and the amount of loss. If the appraisers fail to agree, they shall submit their differences to the umpire. An award in writing by any two shall determine the amount of loss. The Insured and this Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and of the umpire.

35. **CONSEQUENTIAL LOSS**

This policy insures against:

A.      consequential loss to the property insured caused by change of temperature or humidity or by interruption of power, heat, air conditioning, or refrigeration resulting from a peril insured against. However, it is agreed that exclusions C., D., and E. contained in Clause 9, "Perils Excluded" shall not apply to this extension when such loss or damage occurs at a location which is not owned or operated by the Insured;

B.      the reduction in value to the remaining part or parts of any lot of merchandise usually sold by lots or sizes, color ranges, or other classifications due to damage to or destruction of a part of such lots or other classifications due to a peril insured against.

36.    **PAIR AND SET**

Except as provided under the Machinery clause and paragraph B of the Consequential Loss clause, in the event of loss or damage by a peril insured against to any article or articles which are part of a pair or set, the measure of loss or damage to such article or articles shall be, at the Insured's option:

A.    the reasonable and fair proportion of the total value of the pair or set, giving consideration to the importance of said article or articles, but in no event shall such loss or damage be construed to mean total loss of the pair or set; or

B.    the full value of the pair or set provided that the Insured surrenders the remaining article or articles of the pair or set to the Company.

37.    **ASSISTANCE AND COOPERATION OF THE INSURED**

The Insured shall cooperate with this Company and, upon this Company's request and expense, shall attend hearings and trials and assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses, and in conducting suits.

38.    **SUE AND LABOR**

In case of actual or imminent loss or damage by a peril insured against, it shall, without prejudice to this insurance, be lawful and necessary for the Insured, their factors, servants, or assigns to sue, labor, and travel for, in, and about the defense, the safeguard and the recovery of the property or any part of the property insured hereunder; nor, in the event of loss or damage, shall the acts of the Insured or of this Company in recovering, saving, and preserving the insured property be considered a waiver or an acceptance of abandonment. The expensed so incurred, shall be borne by the insured and the Company to the extent of their respective interests. The Company's portion of such expenses shall be limited to the extent that such expense reduce the loss which would otherwise be payable under this policy. This provision does not increase any amounts or limits of insurance provided by this policy and deductible provisions shall apply to any expenses so incurred.

This Company shall contribute to the expenses so incurred according to the rate and quantity of the sum herein insured.

39.    **PAYMENT OF LOSS**

All adjusted claims shall be due and payable no later than 30 days after presentation and acceptance of proofs of loss by this Company or its appointed representative.

40.    **REINSTATEMENT**

With the exception of loss subject to annual aggregate limits as noted in the Limits of Liability clause, no loss hereunder shall reduce the amount of this policy.

41.   **SUIT AGAINST THE COMPANY**

No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this policy. The company agrees that any action or proceeding against it or for recovery of any loss under this policy shall not be barred if commenced with the time period prescribed for suits on contracts within the jurisdiction within which the suit is brought. Suit may be brought anywhere in the United States.

42.   **CERTIFICATES OF INSURANCE**

Any certificate of insurance issued in connection with this policy shall be issued solely as a matter of convenience or information for the addressee(s) or holder(s) of said certificate of insurance, except where any Additional Insured(s) or Loss Payee(s) are named pursuant to the Special Provisions of said certificate of insurance. In the event any Additional Insured(s) or Loss Payee(s) are so named, this policy shall be deemed to have been endorsed accordingly, subject to all other terms, conditions and exclusions stated herein. Permission is granted to issue certificates of insurance on behalf of this Company.

43.   **CANCELLATION**

A.   This policy may be canceled at any time at the request of the Insured or it may be canceled or non-renewed by the Company by mailing to the Insured at the address of the insured shown on the face of this policy and to the additional named insureds/loss payees indicated on the certificates of insurance issued during the term of this policy, written notice stating when, not less than 90 days thereafter, ten (10) days for nonpayment of premium, such cancellation or non-renewal shall be effective.

B.   The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation or non-renewal stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Insured or by the Company shall be equivalent to mailing.

C.   Cancellation or non-renewal shall not affect coverage on any shipment in transit prior to the date and time of cancellation. Coverage will continue in full force until such property is safely delivered and accepted at place of final destination.

44.   **JOINT LOSS AGREEMENT**

In the event the insurance company, if any, providing boiler and machinery insurance disputes any portion of the claim made against that company and this Company believes the boiler and machinery policy should have paid that portion of the claim, then this Company shall, upon written request of the Insured, pay to the Insured one-half of the amount of the loss which is in disagreement, but in no event more than this company would have paid if there had been no boiler and machinery policy(ies) in effect, subject to the following conditions:

25

A.   The amount of the loss which is in disagreement, after making provisions for any undisputed claims payable under the said policies and after the amount of the loss is agreed upon by the Insured and the insurers, is limited to the minimum amount remaining payable under the boiler and machinery policy(ies);

B.   The boiler and machinery insurer(s) shall simultaneously pay to the Insured one-half of said amount which is in disagreement;

C.   The payments by the insurers hereunder and acceptance of the same by the Insured signify the agreement of the insurers to submit to and proceed with arbitration within 90 days of such payments; the arbitrators shall be three in number, one of whom shall be appointed by the Property insurer(s) and one of whom shall be appointed by the Boiler and Machinery insurer(s) and the third shall be appointed with the consent of the other two insurers, and the decision by the arbitrators shall be binding upon the insurers and that judgment upon such award may be entered in any court of competent jurisdiction;

D.   The Insured agrees to cooperate in connection with such arbitration but not to intervene therein;

E.   The provisions of this endorsement shall not apply unless such other policy(ies) issued by the Boiler and Machinery insurance company(ies) is similarly endorsed;

F.   Acceptance by the Insured of sums paid pursuant to the provisions of this endorsement, including an arbitration award, shall not operate to alter, waive, surrender, or in any way affect the rights of the Insured against any of the insurers.

## 45.   FULL WAIVER

The terms and conditions of this form and endorsements attached thereto are substituted for those of the policy to which it is attached, all terms, conditions and endorsements of latter being waived, wherever in conflict.

## 46.   VALUES

*delete by Endt*

The values declared to the Company at the inception of the policy are for premium purposes only and shall not limit the coverages provided by this policy.

## 47.   TITLES OF PARAGRAPHS

The titles of the paragraphs of this form and of endorsements and supplemental contracts, if any, now or hereafter attached hereto are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

48.    PRIORITY OF PAYMENTS

In the event of loss caused by or resulting from more than one peril and/or interest, the limit of liability of the primary coverage shall apply first to the perils and/or interest not insured by this policy and the remainder, if any, to the perils and/or interest insured hereunder.  In determining the amount of loss over which this policy is excess, the combined total loss, damage or expense by any perils or perils resulting in loss or damage to any property or coverages insured under any underlying insurance shall be used, even though all such perils, property or coverages insured by the underlying policy, may not be insured under this policy.

Attaching to and forming part of Policy No. **GW0000253** of the **Hartford Fire Insurance Company.**

3-18-03

Authorized Signature / Date

#49  Newly Acquired Property
     (See End A)

#50  Schedule of Values
     (See End A)

# ENDORSEMENT A

## TIER 1 JURISDICTIONS

| Jurisdiction | Counties |
|---|---|
| ALABAMA | Baldwin, Mobile |
| FLORIDA | Entire State |
| GEORGIA | Bryan, Camden, Chatham, Glynn, Liberty, McIntosh |
| HAWAII | Entire State |
| LOUISIANA | Cameron, Iberia, Jefferson, Lafourche, Orleans, Plaquemines, St. Bernard, St. Mary, St. Tammany, Terrebonne, Vermilion |
| MISSISSIPPI | Hancock, Harrison, Jackson |
| NORTH CAROLINA | Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Currituck, Dare, Hyde, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrrell, Washington |
| PUERTO RICO | Entire Territory |
| SOUTH CAROLINA | Beaufort, Berkeley, Charleston, Colleton, Georgetown, Horry, Jasper |
| TEXAS | Aransas, Brazoria, Calhoun, Cameron, Chambers, Galveston, Harris, Jackson, Jefferson, Kenedy, Kleberg, Matagorda, Nueces, Refugio, San Patricio, Willacy |
| US VIRGIN ISLANDS | Entire Territory |
| VIRGINIA | Accomack, Chesapeake, Gloucester, Hampton, Isle of Wight, James City, Lancaster, Mathews, Middlesex, Newport News, Norfolk, Northampton, Northumberland, Portsmouth, Suffolk, Surry, Virginia Beach, Westmoreland, York. |

Attaching to and forming part of Policy No. GW0000253 of the Hartford Fire Insurance Company.

_3-18-03_

Authorized Signature / Date

# THE HARTFORD



Policy Number:   GW 0000253                          Effective Date:   02/03/03

Named Insured and Address:        MICHAEL AUFRECHT, ETAL
                                  6612 NORTH LEMAI
                                  LINCOLNWOOD, IL 60712

Endt. No. _____A_____

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

> This endorsement modifies insurance provided under the following:
>
> PROPERTY EXCESS

IT IS AGREED AND UNDERSTOOD THAT THE FOLLOWING CHANGES ARE MADE A PART OF THE POLICY AS OF THE EFFECTIVE DATE OF THE POLICY.

### AMENDMENT TO THE BROKER MANUSCRIPT POLICY FORM

ITEM 1:          PAGE 26, ITEM # 46., **VALUES**, IS DELETED IN ITS ENTIRETY.

ITEM 2:          PAGE 27, ITEM # 49., **NEWLY ACQUIRED PROPERTY** IS ADDED AS FOLLOWS:

    49.     "NEWLY ACQUIRED PROPERTY 90 DAY REPORTING REQUIREMENT WITH ADDITIONAL PREMIUM CHARGED FOR ADDITIONS.  NO NEWLY ACQUIRED COVERAGE FOR PROPERTIES LOCATED IN CAT PRONE AREAS (TIER 1 WIND AND STATE OF FLORIDA) WITHOUT PRIOR APPROVAL AND SEPARATE RATING."

ITEM 3:          PAGE 27, ITEM # 50., **SCHEDULE OF VALUES** IS ADDED AS FOLLOWS:

    50.     "SUBJECT TO VALUES REPORTED ON THE SCHEDULE OF VALUES ON FILE WITH THE COMPANY.  IF NO VALUES HAVE BEEN REPORTED FOR CERTAIN COVERAGE, THEN THERE WILL BE NO COVERAGE FOR THAT ITEM AT TIME OF LOSS."

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

JMM  3/18/03

This endorsement does not change the policy except as shown.

**Form L-5040-0 (Ed. 4-86)**  Printed in U.S.A. (NS)

## POLICY LIMITATIONS

It is agreed that this policy includes the coverages and amendments as indicated below:

A.   <u>Peril Exclusion</u>

This Policy does not insure against loss or damage caused by, resulting from, contributed to or made worse by actual, alleged or threatened release, discharge, escape or dispersal of "CONTAMINANTS or POLLUTANTS", all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical damage insured by this Policy.

Nevertheless, if fire is not excluded from this Policy and a fire arises directly or indirectly from seepage or contamination or pollution, any loss or damage insured under this Policy arising directly from that fire is insured, subject to the provisions of this Policy.

B.   <u>Debris Removal Clause</u>

1.   This Company shall not be liable under this Policy for any increased cost of debris removal necessitated by the enforcement of any law or ordinance regulating any form of "CONTAMINANTS or POLLUTANTS".

2.   This Policy covers against expense incurred in the removal of debris of the property covered when damaged or destroyed by a peril not otherwise excluded herein. In determining the Company's liability for such payment the measure of recovery within the "Ultimate Net Loss" shall be the lesser of:

(a)   the amount actually expended by the Insured for the removal of debris of property insured; or

(b)   25% of the amount of direct physical loss or damage to the property insured which necessitated the debris removal.

Payment made shall be part of, and not in addition to, the applicable limit or sublimit of liability.

C.   <u>Limitation Applicable to Law and Ordinance Coverage</u>

Notwithstanding any coverage otherwise provided, there shall be no liability under this Policy for any increased cost of reconstruction, repair, rebuilding, replacement of material, demolition, or loss of use necessitated by the enforcement of any law or ordinance regulating any form of "CONTAMINANTS or POLLUTANTS".

D.   <u>Definition</u>

"<u>CONTAMINANTS or POLLUTANTS</u>":  As used herein, means any material which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, fungi, virus, or hazardous substances as listed in the Federal Water Pollution Control Act, Clear Air Act, Resource Conservation and Recovery Act of 1976, and the Toxic Substances Control Act, or as designated by the U.S. Environmental Protection Agency.

PE 6

THE HARTFORD 

Policy Number:    GW 0000253                Effective Date:    02/03/03

Named Insured and Address:        MICHAEL AUFRECHT, ETAL
                                  6612 NORTH LEMAI
                                  LINCOLNWOOD, IL 60712

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

## EXCLUSION- "DENIAL OF SERVICE ATTACK"

The following change applies to all coverages:

The following Specific Exclusion is added to this policy form:

**"Denial of Service Attack"**
We will not pay for loss or damage caused by, resulting from, or arising out of "Denial of Service Attack"

**"Denial of Service Attack"** means the malicious direction of a high volume of worthless inquires to web site or e-mail destinations, effectively denying or limiting legitimate access.

THE HARTFORD 

Policy Number:    GW 0000253          Effective Date:    02/03/03

Named Insured and Address:          MICHAEL AUFRECHT, ETAL
                                    6612 NORTH LEMAI
                                    LINCOLNWOOD, IL 60712

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION- " ELECTRONIC VANDALISM"

The following change applies to all coverages:

The following Specific Exclusion is added to this policy form:

**"Electronic Vandalism"**
We will not pay for loss or damage caused by resulting from or arising out of "Electronic Vandalism".

**Ensuing Loss:** If physical loss or damage by a covered peril ensues, we will only pay for such ensuing loss.

**"Electronic Vandalism"** means:
a.  The willful or malicious alteration, manipulation or destruction of "Computer Media and Data; or
b.  The addition of a virus, malicious code or similar instruction that:
    (1) Disrupts the normal operation of "Computer Equipment"; or
    (2) Results in physical damage to "Computer Equipment" and "Computer Media and Data".

**"Computer Equipment"** includes the following equipment:
a.  Computer hardware, including microprocessors and related component parts;
b.  Peripheral equipment, such as printers and modems;
c.  Computer network equipment;
d.  Electronic communications equipment

**"Computer Media and Data"** means:
a.  Prepackaged software programs and instructional material purchased for use with your computer system;
b.  Electronic data processing, recording, or storage media such as films, tapes, cards, discs, drums or cells; and
c.  Data and programming records used for electronic data processing or electronically controlled equipment stored on such media.
"Computer Media and Data" does not mean "Money" or "Securities".

Policy Number:   GW 0000253

## EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

A. This policy does not insure against loss or damage caused directly or indirectly by the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

    1. The failure, malfunction or inadequacy of:
        a.   Any of the following, whether belonging to any insured or to others;
             (1)  Computer hardware, including microprocessors;
             (2)  Computer application software;
             (3)  Computer operating systems and related software;
             (4)  Computer networks;
             (5)  Microprocessors (computer chips) not part of any computer system;
             (6)  Any other computerized or electronic equipment or components; or

        b.   Any other products, and any services, data or function that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph A.1.a. above;
        due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times.  An example is the inability of computer software to recognize the year 2000.

    2. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by the Insured or by others to determine, rectify or test for, any potential or actual problems described in Paragraph A.1. above.

B. If any of the perils, as described in Paragraph A. above, results in loss or damage by a peril that is not otherwise excluded, then this policy will pay for such resulting loss or damage; however, destruction, distortion or corruption of any computer data, coding, program or software is specifically excluded directly or indirectly regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

C. This policy does not insure against repair, replacement or modification of any of the items in Paragraphs A.1. above in order to correct any deficiencies or change any features.

D. All provisions of this endorsement also apply to the failure of any utility service provider to provide utility services.  These provisions apply to the utility service provider in the same manner as to the insured.

C-194-SP

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – WAR, TERRORISM AND MILITARY ACTION

**A.** Any exclusion for war and/or military action contained elsewhere in this policy is replaced by the following exclusion.

### War And Military Action Exclusion

We will not pay for loss or damage caused directly or indirectly by the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

1. War, including undeclared or civil war; or
2. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or
3. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

With respect to any action that comes within the terms of this exclusion and involves nuclear reaction or radiation, or radioactive contamination, this War And Military Action Exclusion supersedes the Nuclear Hazard Exclusion.

**B.** Regardless of the amount of damage and losses, the Terrorism Exclusion applies to any incident of "terrorism":

1. That involves the use, release or escape of nuclear materials, or that directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or
2. That is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or
3. In which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Except as provided in **B.1.**, **B.2.** or **B.3.** above, the Terrorism Exclusion will only apply to an incident of "terrorism" in which the total of insured damage to all types of property in the United States, its territories and possessions, Puerto Rico and Canada exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any "terrorism" exclusions. Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident.

The preceding paragraph describes the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether the Terrorism Exclusion will apply to that incident.  When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under any other form or coverage part attached to this policy.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any element of loss or damage that is otherwise excluded elsewhere in this policy.

**Terrorism Exclusion**

We will not pay for loss or damage caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

But if "terrorism" results in fire, this exclusion will not apply to loss or damage caused by that fire to Covered Property located in a state where a statute provides that coverage for the peril of fire is required to be provided pursuant to a statutorily prescribed standard fire insurance policy.

However, this exception for fire applies only to direct loss or damage by fire to Covered Property. This exception does not apply to insurance provided under any of the following coverages:

1. Business Interruption;
2. Business Income;
3. Extra Expense;
4. Legal Liability;
5. Leasehold Interest;
6. Or Loss of Rents.

"Terrorism" means activities against persons, organizations or property of any nature:

1. That involve the following or preparation for the following:

   a. Use or threat of force or violence; or

   b. Commission or threat of a dangerous act; or

   c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2. When one or both of the following applies:

   a. The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

   b. It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

But with respect to any such activity that also comes within the terms of any war and/military action exclusions, that exclusion(s) supersedes this Terrorism Exclusion.

In the event of an incident of "terrorism" that involves nuclear reaction or radiation, or radioactive contamination, this Terrorism Exclusion supersedes any nuclear hazard exclusions contained elsewhere in this policy..

# "Fungus" Endorsement

The Policy to which this endorsement is attached is amended as follows:

1. The provisions of this endorsement supersede any contradictory provisions found in any other form or endorsement attached to this policy.

2. The policy is amended to add the following loss exclusions:

   This policy does not insure loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:

   (a) Presence, growth, proliferation, spread or any activity of "fungus", mold, mildew, wet rot, dry rot, bacteria or virus. This exclusion does not apply if "fungus", mold, mildew, wet rot, dry rot, bacteria or virus results from fire, lightning, or flood, if flood coverage applies, and if all reasonable means were used to save and preserve the property from further damage at the time of and after the loss occurrence.

   (b) Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

3. The policy is amended to add the following additional coverage:

   **Additional Coverage for Fungus, Mold, Wet Rot, Dry Rot, Bacteria and Virus.**

   A. Loss or Damage associated with Fungus, Mold, Mildew, Wet or Dry Rot, Bacteria or Virus is covered only if all reasonable means were used to save and preserve the property from further damage at the time of and after the occurrence and only if such damage was the result of one or more of the following causes that are not otherwise excluded by this policy and that occurred during the policy period:

   |        |                                            |
   |--------|--------------------------------------------|
   | (1.)   | explosion,                                 |
   | (2.)   | windstorm or hail,                         |
   | (3.)   | smoke,                                      |
   | (4.)   | aircraft or vehicles,                      |
   | (5.)   | riot or civil commotion,                   |
   | (6.)   | vandalism,                                  |
   | (7.)   | leakage from fire extinguishing equipment, |
   | (8.)   | sinkhole collapse,                         |
   | (9.)   | volcanic action,                           |
   | (10.)  | falling objects,                           |
   | (11.)  | weight of snow, ice or sleet,              |
   | (12.)  | water damage.                              |

   B. Coverage for loss associated with fungus, mold, mildew, wet or dry rot, bacteria or virus is limited to $15,000.00. Regardless of the number of claims, this limit is the most that will be paid for the total of all loss or damage arising out of all occurrences which take place in a 12-month period (starting with the beginning of the present annual policy period.) With respect to a particular occurrence of loss which results in fungus, mold, mildew, wet or dry rot, bacteria or virus, we will not pay more than

a total of $15,000.00 even if the fungus, mold, wet or dry rot, bacteria or virus continues to be present or active, or recurs, in a later policy period.

4. If the Ordinance or Law Coverage is included in this policy, the following exclusions apply:

This policy does not insure any cost associated with or loss arising out of:

1. Enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to the presence, growth, proliferation, spread or any activity of fungus, mold, mildew, wet or dry rot, bacteria or virus; or

2. Enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or any way respond to or access the effects of fungus, mold, mildew, wet or dry rot, bacteria or virus.

5. Definitions:

"**Fungus**" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

"**Sinkhole collapse**" means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include the cost of filling sinkholes or sinking or collapse of land into manmade underground cavities.

"**Falling objects**" does not include loss or damage to personal property in the open or the interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

"**Water damage**" means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system or its related equipment and parts), that is located on the described premises and contains water or steam.

**All other terms and conditions remain unchanged.**

C-207 (10/2002)  For use with Specialty Property Forms



BOOKED IN SOURCE

GW 253

# POLICYHOLDER NOTICE

ALL CLAIMS FOR LOSS OR DAMAGE RELATED TO THE INSURANCE PROVIDED BY THE
ATTACHED POLICY SHOULD BE REPORTED TO:

FIRST STATE MANAGEMENT GROUP
ATTN: JERRY HOURIHAN, PROPERTY CLAIMS MANAGER
150 FEDERAL STREET
BOSTON, MA  02110
617-526-7858
617-526-0611 FAX


ALTERNATE CONTACT NAMES ARE:
LEONARD T. GRANT     617-526-7862
DEANNE MORIN          617-526-7835

**HS**

BOOKED IN SOURCE

## ENDORSEMENT NO. 1

| | |
|---|---|
| **Named Insured:** | Michael Aufrecht, Etal |
| **Effective Date:** | February 11, 2002 |
| **Additional Premium:** | $261,873 |

MAR 2 4 2003

In consideration of the additional premium shown above, it is hereby understood and agreed that the total insurable values is amended to $210,050,000 in lieu of $110,878,000.

All other terms and conditions remain unchanged.

Attaching to and forming part of Policy No. **GW0000253** of the **Hartford Fire Insurance Company.**

_3-18-03_

Authorized Signature / Date