# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RESTORATION SPECIALISTS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 08-CV-644 |
| ) | |
| HARTFORD FIRE INSURANCE CO. and, ) | |
| NAPCO, LLC, ) | Judge Robert M. Dow, Jr. |
| ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant NAPCO LLC's motion to dismiss Plaintiff's claim for failure to state a claim upon which relief can be granted [51] pursuant to Federal Rule of Civil Procedure 12(b)(6). Having carefully reviewed the briefs [39, 59, 60], the Court respectfully denies the motion [51] in its entirety.

**I.    Background**

This litigation centers on a dispute over property insurance for a consortium of property owners, including Plaintiff Restoration Specialists ("Plaintiff"). The insurance was procured from Defendant Hartford Fire Insurance Co. ("Hartford") with the assistance of Michael Kogen, a licensed insurance agent with McHenry Services, and Defendant NAPCO, LLC ("NAPCO"), an insurance broker. First Amended Complaint ("FAC") ¶ 8. Kogen sent NAPCO a list of property owners and properties to be insured, and NAPCO then sent the list to Defendant Hartford. *Id.* ¶ 10.

The policy issued by Hartford on March 18, 2003 referred to the consortium of property owners as "MICHAEL AUFRECHT ETAL" and defined the "Insured" as "Michael Aufrecht, et

al and any subsidiary, associated or affiliated company, corporation, firm, organization, partnership, joint venture or individual as exists now or is hereafter constituted or acquired, and any other party or interest that is required by contract or other agreement to be named, hereafter referred to as the 'Insured'." FAC ¶¶ 11-12. The Policy also incorporated an exhibit, captioned "Michael Aufrecht, ETAL Schedule of Locations/Values," which included Plaintiff's property at 713 West Wrightwood. *Id.* ¶ 13. The "agent or broker's name" listed on the policy is "NAPCO LLC." *Id.*, Ex. C, at 1.

On June 29, 2003, the third floor back porch of an apartment building owned by Plaintiff at 713 West Wrightwood collapsed. FAC ¶ 15. Plaintiff tendered a claim to Hartford claiming losses of more than $250,000 from the incident. *Id.* ¶16. In 2004, Hartford determined the covered loss to be $59,946.37 and, after taking into account Plaintiff's deductible, forwarded Plaintiff a check for $9,946.37. *Id.* ¶ 18. Plaintiff contested Hartford's assessment. *Id.* ¶ 19.

On February 6, 2007, Hartford sent a letter to Plaintiff in which Hartford denied coverage for Plaintiff's claim in its entirety and demanded return of the prior payment. FAC ¶ 20. In its denial letter, Hartford explained that it "has recently learned that Restoration Specialists, LLC has the sole ownership interest in the Premises and Mr. Aufrecht, the only named insured on the Policy has never possessed any ownership interest in the Premises." *Id.*, Ex. D, at 1. Accordingly, under Hartford's reading of its policy language, "Mr. Aufrecht has no insurable interest in the Premises," and "the Policy does not afford coverage for the loss." *Id.* at 2. In addition to that brief explanation, Hartford's letter expressly stated that it "does not waive or should it be interpreted to be estopped from relying upon, any term provision, condition, limitation or exclusion in its Policy that may be applicable, which Hartford hereby reserves its right to rely upon." *Id.* The letter continued by asserting that "[n]either by this letter nor by any

2

other conduct does Hartford waive any of its rights or defenses, nor shall Hartford be estopped from relying upon the terms, provisions, conditions, limitations and exclusions of the Policy." *Id.*

Hartford subsequently declined to reconsider its denial of Plaintiff's claim. FAC ¶ 22. In a letter dated March 1, 2007, Hartford explained that at some time "[p]rior to the issuance of the Policy, it was represented to Hartford's underwriter that Mr. Aufrecht had an insurable interest in all of the properties insured under the Policy" and that in July 2006, Hartford "learned, for the first time, that this was not the case." *Id.*, Ex. F, at 1. In that March 2007 letter, Hartford again included language asserting that it did not waive, and reserved its right to assert, any other arguments or defenses. *Id.*

In the wake of the denial of its request for coverage, Plaintiff filed this diversity action against Hartford and NAPCO. In Counts I and II, Plaintiff seeks a declaratory judgment that it is insured under Hartford's policy and asserts a claim that Hartford breached its contractual obligations under the insurance policy by refusing to reimburse Plaintiff's expenses resulting from an occurrence that Plaintiff contends was covered under its policy. FAC ¶¶ 23-29. In Count III, Plaintiff seeks damages for what Plaintiff contends was "vexatious and unreasonable conduct" on Hartford's part in refusing to pay Plaintiff's insurance claim. *Id.* ¶¶ 30-31. Count IV seeks reformation of the policy to make it clear that Plaintiff is a named insured party.[1] *Id.* ¶¶ 32-35. Finally, in Counts V, VI, and VII, Plaintiff seeks damages from NAPCO for breach of fiduciary duty, negligence and breach of contract based on NAPCO's role in purchasing the insurance that underlies the coverage dispute between Plaintiff and Hartford. *Id.* ¶¶ 36-49. In particular, as to NAPCO, Plaintiff alleges, *inter alia*, that NAPCO acted as an insurance broker

---

[1] Restoration claims that the list submitted by Kogen to NAPCO listed Restoration Specialists as the owner of the property in question, but that the list submitted by NAPCO to Hartford erroneously listed "Preservation Specialists" as the owner. FAC ¶¶ 34-35.

on Plaintiff's behalf and breached its duties to Plaintiff by acquiring property insurance that did not clearly state that Plaintiff was a named insured. *Id*. ¶¶ 37, 38, 42, 43, 48. Plaintiff alleges that it suffered damages as a result of Hartford's denial of coverage and the attorneys' fees, expenses, and costs incurred in contesting Hartford's denial and in bringing this litigation. *Id*. ¶¶ 39, 44, 49.

Currently before the Court is NAPCO's motion to dismiss [51] the claims asserted against it. In its motion, NAPCO contends that the underlying dispute between Plaintiff and Hartford disposes of the claims against NAPCO regardless of which party prevails. By NAPCO's reckoning, if Plaintiff succeeds in demonstrating that it was entitled to coverage, then NAPCO obtained the proper coverage and Hartford will be obligated to pay the damages sought in the complaint. On the other hand, according to NAPCO, if Hartford's denial of coverage is held to be correct "and [Plaintiff] has no legal relationship with the named insured Michael Aufrecht, it must follow that NAPCO also had no legal relationship with [Plaintiff] to trigger any obligations toward that entity." In short, it is NAPCO's position that "regardless of how the coverage dispute plays out between Restoration and Hartford, Plaintiff cannot have a recognizable cause of action against NAPCO." For its part, Plaintiff agrees that it may not successfully pursue NAPCO if it prevails against Hartford in the coverage dispute, but vigorously disputes NAPCO's contention that a defeat on the coverage claim would doom Plaintiff's case against NAPCO.

## II.  Analysis

### A.  Legal Standard on Motion to Dismiss for Failure to State a Claim

Defendant NAPCO moved to dismiss Restoration's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th

Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Svcs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. The Court accepts as true all of the well-pleaded facts alleged by the Plaintiff and all reasonable inference that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

### B. Application of the Standard to NAPCO's Arguments

At their core, NAPCO's arguments for dismissal rest on the notion that Plaintiff has pled itself out of court through the allegations set forth in the complaint and the additional facts encompassed within the exhibits attached to the complaint. According to NAPCO, Plaintiff's own allegations make clear that NAPCO was a subagent of Plaintiff, and the denial letters attached to the complaint show that Hartford did not rely on the alleged "scrivener's error" in denying Plaintiff's claim. NAPCO also contends that Plaintiff's claims against it are premature; in NAPCO's view, until Plaintiff obtains a ruling against it in the coverage dispute, it has sustained no damages. For the reasons stated below, the Court finds none of NAPCO's arguments convincing.

### 1. The "agency" issue

NAPCO's contention that the "agency" issue may be resolved in its favor on a motion to dismiss can be disposed of in short order. As NAPCO acknowledges, Illinois courts have commented that the question of agency typically presents an issue of fact that seldom can be resolved at the summary judgment stage, much less on a motion to dismiss. See, *e.g.*, *AYH Holdings, Inc. v. Avreco, Inc.*, 357 Ill. App. 3d 17, 34 (1st Dist. 2005). NAPCO's suggestion that this is one of the rare cases in which the agency issue is undisputed even at the motion to dismiss stage rests on an overly narrow reading of the allegations of the complaint. Read as a whole, Plaintiff's allegations are consistent with two alternative theories: one that NAPCO was Plaintiff's agent and/or broker (see, *e.g.*, FAC ¶¶ 37, 42); the other that NAPCO was a subagent (see, *e.g.*, *id.* ¶ 8). The insurance policy itself designates NAPCO as the policyholder's "agent or broker" (*id.*, Ex. C, at 1), thus providing some additional support for an agency (as opposed to a subagency) theory. While discovery no doubt will shed further light on the actual relationships of the parties, because the Federal Rules of Civil Procedure permit alternative pleading (see *infra* p.10, n.4), the Court may not accept NAPCO's characterization of the pleadings as alleging only a subagency theory, and thus need not address at this time the legal consequences that NAPCO insists follow from that characterization.

### 2. Hartford's asserted grounds for denial of coverage

While it is appropriate to take into account Hartford's letters because they were attached to the amended complaint and are central to Plaintiff's claims (see *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) ("documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim")), those letters must be read as a whole. NAPCO focuses on the specific ground for

denial of the claim that Hartford provided in the letters, treating that ground as a complete and definitive statement of Hartford's position as to why coverage was not provided under the policy. But the letters also expressly reserved Hartford's right to assert other arguments and defenses. In addition, the letters reference representations that were made to Hartford by unnamed persons or entities – which may include NAPCO employees – on which Hartford relied in determining the scope of its coverage. Whether any of Hartford's arguments and defenses (both stated and reserved) are persuasive is a matter for another day. For present purposes, in ruling on a motion to dismiss, the Court may not accept NAPCO's contention that it necessarily is off the hook if Plaintiff prevails in the coverage dispute. A premise of NAPCO's position that it wins if Hartford wins is that Hartford's denial of coverage will be upheld on the ground asserted in Hartford's letter – namely, that Plaintiff has no legal relationship with the named insured. But if Hartford prevails on another ground – a matter as to which the Court cannot even speculate at this time – it remains possible that NAPCO could be liable even if Hartford is not.

In sum, a complaint should be dismissed for failure to state a claim if it fails to include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quotation marks omitted) (elaborating that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). NAPCO's arguments for dismissal fail to throw doubt on the plausibility of Plaintiff's allegations.[2]

---

[2] Contrary to NAPCO's suggestion, Plaintiff is not required at this stage of the case to present "evidence" that Hartford's coverage position might have changed but for the "scrivener's error" alleged to have been made by NAPCO.

7

### 3. NAPCO's "prematurity" argument

NAPCO also contends that Plaintiff's lawsuit is premature, pointing to the fact that Plaintiff alleges that NAPCO failed to secure proper insurance coverage before any legal determination has been made as to whether the insurance coverage that Plaintiff obtained was improper. In support of its position, NAPCO draws the Court's attention to the principle that in professional negligence claims, damages must be incurred and are not presumed. NAPCO specifically relies on *Lucey v. Law Offices of Pretzel & Stouffer*, 301 Ill. App. 3d 349 (1st Dist. 1998), an attorney malpractice case. In *Lucey*, the court observed that to prevail on an attorney malpractice claim, the plaintiff must affirmatively plead and prove that he suffered injuries as a result of the attorney's malpractice." *Id*. at 353. The court added that "[w]here the mere possibility of harm exists or damages are otherwise speculative, actual damages are absent and no cause of action for malpractice yet exists." *Id*. Thus, the court explained that "a cause of action for legal malpractice will rarely accrue prior to the entry of an adverse judgment, settlement, or dismissal of the underlying action in which plaintiff has become entangled due to the purportedly negligent advice of his attorney." *Id*. at 356. Finally, the court mentioned that "[s]ound policy reasons exist in opposition to a rule which would require the client file a provisional malpractice action against his attorney whenever the attorney's legal advice has been challenged," including "judicial economy and preservation of the attorney-client relationship." *Id*. at 357.[3]

While *Lucey* lends some support to NAPCO's argument, another case cited in NAPCO's brief that arose in a more analogous context (*cf. Commonwealth Ins. Co. v. Stone Container Corp.*, 323 F.3d 507, 511 (7th Cir. 2003) ("it is not a foregone conclusion that the same analysis

---

[3] Even under *Lucey*, NAPCO's request for dismissal *with prejudice* would be inappropriate. See *Lucey*, 301 Ill. App. 3d at 359 ("While we concur in the trial court's reasons for dismissing plaintiff's complaint, we believe the trial court abused its discretion in dismissing the complaint with prejudice").

that is applied to legal malpractice claims would be applied to claims against insurance brokers")) persuades the Court that Plaintiff's claims against NAPCO are not premature. In *Broadnax v. Morrow*, 326 Ill. App. 3d 1074 (4th Dist. 2002), the plaintiff alleged that the defendant negligently failed to procure an insurance policy that met the plaintiff's insurance needs. In his initial action, the plaintiff brought a declaratory judgment action against the insurance company. *Id*. at 1076. After the trial court granted and the appellate court affirmed summary judgment in favor of the insurer in the coverage dispute, the disappointed policyholder filed a separate negligence action against the broker. *Id*. at 1077. The trial court granted the broker's motion to dismiss on statute of limitations grounds, and the appellate court affirmed in a 2-1 decision.

In so ruling, the appellate court specifically rejected the plaintiff's position – mirroring NAPCO's contention in this litigation – that "until he knew the outcome of the underlying breach of contract litigation [against the insurer], any negligence claim against [the broker] would be 'frivolous.'" *Broadnax*, 326 Ill. App. 3d at 1081. Instead, the court held that the plaintiff should have reasonably known of the defendant's possible negligence when the insurer denied coverage. *Id*.; see also *State Farm Fire & Cas. Co. v. John J. Rickhoff Sheet Metal Co.*, 2009 WL 2581700, at *14 (Ill. App. 1st Dist. Aug. 19, 2009) (holding that a claim against an insurance producer accrues at "the moment when coverage is denied"). At that time, the plaintiff "knew the insurance policy, *procured by defendants*, contained a vacancy provision that was the basis of [the insurer's] denial of his claim." *Id*. (emphasis in original). In light of that knowledge, "there were two reasonable explanations for [the insurer's] denial: either (1) [the insurer's] interpretation of the vacancy provision [of the policy] was incorrect; or (2) defendants obtained an insurance policy that did not meet [the plaintiff's] specific needs." *Id*. And in those

circumstances – which closely parallel the allegations in Plaintiff's complaint – the court held that the plaintiff "had the requisite knowledge to plead alternative theories," which the plaintiff was entitled to do under Illinois law if he was "in doubt as to who is responsible for his injury." *Id*. (citing 735 ILCS 5/2-613 (West 1998)).[4] Indeed, by waiting until the underlying dispute was resolved before bringing his alternative claim, the plaintiff in *Broadnax* lost his claim altogether on statute of limitations grounds.[5]

In view of the accrual of Plaintiff's claim against NAPCO as of the time that Hartford denied coverage (a matter of state law) and the propriety of pleading alternative theories of recovery (as a matter of federal law), NAPCO's argument for dismissal of Plaintiff's claims as premature must fail. As Plaintiff acknowledges, it remains the case that NAPCO will face no liability if Plaintiff prevails in the coverage dispute against Hartford. But because NAPCO has not demonstrated that Plaintiff's claim against NAPCO would be implausible in the event that Plaintiff does not prevail against Hartford, the claims against NAPCO survive at this stage of the case.

---

[4] As noted above, federal law, too, permits "alternative" or "inconsistent" pleading. See, *e.g.*, *Moriarty v. Larry G. Lewis Funeral Directors, Ltd.*, 150 F.3d 773, 777 (7th Cir. 1998) (noting that under Federal Rule of Civil Procedure 8, "inconsistent pleading is permitted"); *Ellison v. Aurora East Sch. Dist. 131*, 2009 WL 884949, at *2 (N.D. Ill. Mar. 27, 2009) (observing that "a plaintiff may alternatively plead inconsistent facts as well as inconsistent theories") (citing Rule 8(d)).

[5] Notably, in dissent, Justice Cook echoed the arguments raised by NAPCO, asking why the plaintiff was "required to assume" that the underlying declaratory judgment action "would be resolved against him" and opining that "[p]arties should not be compelled to file anticipatory claims which may later prove to be unnecessary." *Id*. at 1083 (Cook, J., dissenting).

### III.    Conclusion

For the reasons stated above, NAPCO's motion to dismiss [51] is respectfully denied.

Dated:  September 29, 2009

Robert M. Dow, Jr.
United States District Judge